**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.:**

HOWARD SCHLEIDER and FELICE
VINARUB, as Co-Personal
Representatives for THE ESTATE OF
SARA SCHLEIDER, Deceased,

    Plaintiffs,

vs.

GVDB OPERATIONS, LLC, a Florida
Limited Liability Company d/b/a
GRAND VILLA OF DELRAY EAST and JSMGV
MANAGEMENT COMPANY, LLC, a Florida
Limited Liability Company,

    Defendants.
_____/

**NOTICE OF REMOVAL**

COME NOW the Defendants, GVDB OPERATIONS, LLC, a Florida Limited Liability Company d/b/a GRAND VILLA OF DELRAY EAST and JSMGV MANAGEMENT COMPANY, LLC, by and through undersigned counsel, and hereby remove this action from the Circuit Court of Palm Beach County, Florida, pursuant to 28 U.S.C. §§1441, 1442, and 1446, while reserving all defenses and all objections to venue based on 42 U.S.C. §247d-6d(e)(1).

1. Plaintiffs filed this case, CASE NO. 50-2021-CA-003351, in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida on March 12, 2021. (Compl. ¶ 1. **Ex. A.**).

2. Defendants were served on March 17, 2021. **Ex. B**.

1

3.      Defendants are timely filing this Notice of Removal within thirty days of service of process as required by 28 U.S.C. § 1446(b).

4.      Removal to the United States District Court for the Southern District of Florida, Palm Beach Division, is proper because the Complaint was filed in the Circuit Court of Palm Beach County, Florida located within the jurisdiction of this District. *See* §1441(a) and 28 U.S.C. §81(c)(2). Jurisdiction is proper in this Court by virtue of Federal question jurisdiction based on complete preemption and the *Grable* doctrine as well as the Federal officer removal statute.

5.      Specifically, the Public Readiness and Emergency Preparedness Act, 42 U.S.C. §§247d-6d, 247d-6e ("PREP Act"), provides that any claim arising from a COVID-19 countermeasure, countermeasure plan, or countermeasure facility, such as Defendants, shall give rise only to an "exclusive federal cause of action" in an "exclusive federal jurisdiction" and shall be barred from any other type of "suit and liability". §§247d-6d(a)(1), (d)(1), (e)(1). At the very least, the matter of our nation's statutory response to the global COVID-19 pandemic is one that presents a substantial, embedded question of federal law and invokes this Court's jurisdiction. *See Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308 (2005). Further, because Congress saw fit to imbue the United States Department of Health and Human Services ("HHS") with the power to direct and otherwise utilize the private resources of entities, such as Defendants, that are part of the nation's critical infrastructure in this time of a national public health crisis through a nationwide structure of "Authorities Having Jurisdiction" ("AHJ"), Congress necessarily required that these entities would be given the type of jurisdictional protections provided to federal officers under similar conditions.

5.      As required by 28 U.S.C. § 1446(d), concurrent with this filing, Defendants are filing a true and accurate copy of this Notice of Removal with the Circuit Court of Palm Beach County of

the State of Florida. Defendants are also providing notice to Plaintiffs of this filing pursuant to 28 U.S.C. § 1446(d).

6. By filing this Notice of Removal, Defendants do not waive any other rights or defenses that may be available to them.

## I. FACTUAL ALLEGATIONS IN THE COMPLAINT

7. The Complaint asserts claims against Defendants in the context of their provision of care to Ms. Schleider during the COVID-19 pandemic. *See generally* Compl. While Plaintiffs purport to bring these claims under color of state law, their allegations necessarily implicate Defendants' use and administration of covered countermeasures through their operation and management of a covered countermeasure program and a covered countermeasure facility, all of which is squarely controlled and circumscribed by federal law under the PREP Act.

7. Plaintiffs allege that GRAND VILLA DELRAY EAST held itself out to be an Assisted Living facility in Delray Beach, Florida. (*See* Compl. ¶ 11).

8. In addition, Plaintiffs state that Mrs. Schleider resided in GRAND VILLA DELRAY BEACH EAST during the COVID-19 pandemic. (*See* Compl. ¶ 10-13).

9. Plaintiffs question the adequacy of Defendants' administration and use of COVID-19 countermeasures as well as their COVID-19 countermeasure program and facility as defined by HHS's Initial Declaration under the PREP Act. For instance, the Complaint alleges that Ms. Schleider contracted COVID-19 because Defendants negligently supervised the use of PPE that was provided to staff and residents and, moreover, did not use and allocate adequate protective countermeasures in the face of the global pandemic, which put their patients, such as Ms. Schleider, at risk. (*See* Compl. ¶ 17). Such claims necessarily arise from and relate to Defendants' use and administration (or alleged non-use or non-administration) of COVID-19 countermeasures

as well as a COVID-19 countermeasure program and facility, all of which are designed to mitigate and prevent the spread of COVID-19 pursuant to the PREP Act.

10. Plaintiffs' Complaint cannot be read without questioning the sufficiency of Defendants' use of covered countermeasures, such as masks, thermometers, and tests, to prevent and mitigate the spread of COVID-19, as well as their countermeasure program for monitoring, screening, and testing patients and otherwise administering or using a COVID-19 countermeasure program or facility.

## II. FEDERAL QUESTION JURISDICTION EXISTS BY VIRTUE OF COMPLETE PREEMPTION UNDER THE PREP ACT.

11. This case is removable under 28 U.S.C. §1441(a) on the basis of "original jurisdiction" because Plaintiffs' Complaint asserts a claim "arising under" federal law within the meaning of §1331, as Plaintiffs' allegations invoke the exclusive federal jurisdiction of the Court and the immunities from suit and liability promised in the PREP Act. *See* 42 U.S.C. §247d-6d(e) (exclusive federal cause of action and exclusive federal jurisdiction for claims arising from the alleged administration and use of a COVID-19 countermeasure), (a)(1) and (b)(8) (immunity from suit and liability under state and federal law, and preemption of state law)).

### A. The PREP Act Provides for Complete Preemption.

12. "When [a] federal statute completely preempts [a] state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law"). *See Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003) *Beneficial* provides that state claims may be removed to federal court in two circumstances: (1) when Congress expressly provides; or (2) when a federal statute wholly displaces the state-law cause of action. *See Beneficial,* 539 U.S. at 8. The PREP Act meets both these requirements. The PREP Act provides the exclusive remedy for claims related to a covered person's negligent use of

countermeasures to combat a pandemic; the Act provides immunity for the negligent administration of PPE; and it provides exclusive federal jurisdiction in the D.C. Circuit Court for the allegations of willful misconduct resulting therefrom. Accordingly, Plaintiffs' allegations of state law causes of action clearly bring their claims within the purview of the PREP Act and mandate total preemption.

### 1.     PREP Act Application to COVID-19 Pandemic

13.     Congress specifically enacted the PREP Act in anticipation of public health crises such as the COVID-19 pandemic.

14.     The PREP Act provides that when a "disease or other health condition or other threat to health constitutes a public health emergency," the Secretary of HHS may issue a Declaration "recommending [] . . . the manufacture, testing, development, distribution, administration, or use of one or more covered countermeasures" against the disease. 42 U.S.C. § 247d–6d(b)(1) (2018). When such a Declaration issues, "covered persons" who administer or "use covered countermeasures" become "immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." 42 U.S.C. § 247d–6d(b)(1) (2018) (emphasis added).

15.     Moreover, when the PREP Act's immunity provision is triggered, its coverage is sweeping, applying to "all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(1) (2018) (emphasis added).

16.     The PREP Act does not leave Plaintiffs without remedy. Instead, it redirects Plaintiffs to two exclusive federal remedies tailored for individuals with claims of loss arising out of the use

and administration of, or alleged failure to use, or administer covered countermeasures. First, the PREP Act creates a "Covered Countermeasure Process Fund" for the purpose of "providing timely, uniform, and adequate compensation to eligible individuals for covered injuries directly caused by the administration or use of a covered countermeasure." 42 U.S.C. § 247d–6e(a) (2018). Individuals can receive compensation from this fund by applying for benefits through the Countermeasures Injury Compensation Program. *See* 42 C.F.R. §§ 110.1–110.100. Second, an injured person may bring "an exclusive Federal cause of action" under the PREP Act "against a covered person for death or serious physical injury proximately caused by willful misconduct." 42 U.S.C. § 247d-6d(d)(1) (2018). The PREP Act also sets forth specific procedures that govern lawsuits asserting this exclusive cause of action. *Id.* § 247d-6d(e).

17. On March 17, 2020, the Secretary of Health and Human Services issued a Declaration announcing that, as of February 4, 2020, "[l]iability immunity as prescribed in the PREP Act . . . is in effect" for any "[a]ctivities authorized in accordance with the public health and medical response of the Authority Having Jurisdiction to prescribe, administer, deliver, distribute or dispense the Covered Countermeasures following a Declaration of an emergency" related to COVID-19. Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198, 15,201 (Mar. 17, 2020), amended by 85 Fed. Reg. 21,102 (Apr. 15, 2020) (the "Declaration").

18. In that Declaration, the term "administration" is defined broadly to extend beyond the physical distribution of COVID-19 countermeasures to the "management and operation of countermeasures programs, or management and operation of locations for [the] purpose of distributing and dispensing countermeasures." *See* 85 Fed. Reg. 15,202.

19. On June 8, 2020, the Declaration was amended to reflect HHS's initial intent to "identify the full range of qualified countermeasures" as permitted under the PREP Act. 85 Fed. Reg. 35,100.

20. Further, on December 3, 2020, the HHS Secretary issued the Fourth Amendment to the Declaration ("Amendment Four") (published at 85 Fed. Reg. 79190 (Dec. 9, 2020)), which, *inter alia*:

   a. Expressly adopts all COVID-19 Advisory Opinions into its initiating Declaration giving those directives controlling authority over interpretations of the PREP Act; *Id.* at 79191, 79192, 79194-95;

   b. Declares that an omission to administer a covered countermeasure can fall within the PREP Act's protections; *Id.* at 79191, 79194, 79197; and

   c. Makes explicit that cases involving COVID-19 covered countermeasures are to be in the federal system provided by Congress and that this "federal jurisdiction" is essential to the uniform provision of a national response to the COVID-19 pandemic; *Id.* at 79194, 79196, 79197-98.

21. Amendment Four also addresses HHS's authority to define the application of the PREP Act by stating: "42 U.S.C. 247d-6d(b)(7) provides that '[n]o court of the United States, or of any State, shall have subject matter jurisdiction to review, whether by mandamus or otherwise, any action by the Secretary under this subsection.'" *See* Amendment Four, at 26 n.25. Where Congress has expressly delegated interpretative authority to an agency, that agency's interpretative proclamations are controlling on the federal courts. *Chevron*, 467 U.S. at 843–44.

22. On January 8, 2021, HHS published an Advisory Opinion of the Office of General Counsel addressing questions raised by the Fourth Amendment. *See* Advisory Opinion 21-01 on the Public

Readiness and Emergency Preparedness Act Scope of Preemption Provision, Jan. 8, 2021 ("AO 21-01). AO 21-01 confirms that the PREP Act is indeed invoked by allegations that include not only "use" or administration of countermeasures, but alleged failure to act or inaction, where the non-use was the result of conscious decision-making.

23. AO 21-01 also states that "[t]he PREP Act is a 'Complete Preemption' Statute," because it establishes both a federal and administrative cause of action as the only viable claim, and vests exclusive jurisdiction in federal court. *Id.* at 2.

### 2. Congress Explicitly Provided for Complete Preemption Under *Beneficial*

24. Congress intended to regulate national responses to pandemics. The PREP Act expressly satisfies the *Beneficial* test of preemption in stating that "a covered person shall be ***immune from suit and liability*** under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration under subsection (b) has been issued with respect to such countermeasure." §247d-6d(a)(1) (emphasis added); *see also* (b)(8) ("during…a declaration…no State…may establish, enforce, or continue in effect any provision of law or legal requirement that—is different from…any requirement applicable under this section"). The PREP Act further provides that this immunity "applies to any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure . . . or use of such countermeasure." §247d-6d(a)(2)(B). HHS has instructed time and again that this preemption is to be given the broadest possible application.[1]

---

[1] HHS refers *eight times* to the broad applicability of preemption of state law claims, *see* ADVISORY OPINION 21-01 p. 1, HHS, ADVISORY OPINION 20-04 ON THE PREP ACT AND THE SECRETARY'S DECLARATION UNDER THE ACT p. 3 (Oct. 23, 2020) ("ADVISORY OPINION 20-04"); HHS, ADVISORY OPINION 20-02 ON THE PREP ACT AND THE DECLARATION p. 4–5 (May 19, 2020) (ADVISORY OPINION 20-02); ADVISORY OPINION 20-01 p. 2, and *six times* to the broad applicability of immunity from state law claims. *See* ADVISORY OPINION 20-04 p. 1–2; ADVISORY OPINION 20-01 p. 2, 4, 7.

8

25.     More significantly, the PREP Act provides an extensive claims and litigation process for COVID-19 claimants in accordance the directives of *Beneficial* by providing for federal redress and displacing state-law liability.  Specifically, the PREP Act establishes a no-fault monetary fund for those injured by the use or administration of covered countermeasures that must be exhausted prior to relief under the federal civil claims process (§247d-6e(a), (d)(1)), requiring an exclusive federal remedy for all claims related to countermeasures (§247d-6e(d)(5)), and providing a Federal cause of action as the single exception to immunity (§247d-6d(d)(1)).

### 3. The New Administration Reaffirms PREP Act Provides Complete Preemption

26.     Consistently, the new Administration in 2021, reaffirmed that the PREP Act provides for complete preemption of COVID-19 state law claims.  On January 28, 2021, HHS amended the Declaration for the fifth time again asserting that HHS Advisory Opinions are incorporated into the original Declaration. *See* Fifth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19 and Republication of the Declaration, (Jan. 28, 2021), 86 Fed. Reg. 7872, 7874 (stating "[t]he plain language of the PREP Act makes clear that there is complete preemption of state law.").

27.     Consistently, there have been two additional amendments further confirming that the PREP Act is a complete preemption statute, with the sixth on February 16, 2021 and the seventh on March 16, 2021.[2]

28.     In addition to these HHS authorities, the U.S. Department of Justice ("DOJ") filed a Statement of Interest ("SOI") of the United States in *Bolton v. Gallatin Center for Rehabilitation & Healing, LLC*, No. 3:30-cv-00683 (M.D. Tenn. Jan. 19, 2021) at Dkt. No 35, which constitutes the official position of the United States' interest in the enforcement of the PREP Act, stating, *inter*

---

[2] *See* 86 Fed. Reg. 9516 (Feb. 16, 2021), and 86 (Fed. Reg. 14462 (Mar. 16, 2021).

9

*alia,* that the PREP Act "completely preempts claims relating to the administration or use of covered countermeasures with respect to a public health emergency." *Id.,* at 1, *see also* 7-8. The DOJ noted that the PREP Act is crucial to the "whole-of-nation response" to public health emergencies (which depends on cooperation among private-sector partners and state and local officials across the nation) and "sweeping" immunity was granted to encourage such cooperation. *Id.* at 1-2.

29. Recently, on February 10, 2021, the U.S. District Court for the Central District of California specifically invoked AO 21-01 to deny a motion for remand in an action against a nursing home which alleged failure to adequately use PPE and COVID countermeasures, holding that "because the OGC stated that the PREP Act is a complete preemption statute ... an adequate basis for federal question jurisdiction exists." *Garcia v. Welltower OpCo Group LLC,* No. 8:20-cv-02250-JVS-KESx, 2021 U.S.Dist. LEXIS 25738, at *24 (C.D. Cal. Feb. 10, 2021). The Court further found that the allegations of the complaint fell squarely within the scope of the PREP Act:

> Plaintiffs' injuries "aris[e] out of, relat[e] to, or result[] from the administration to or the use by an individual of a covered countermeasure." *See* 42 U.S.C. § 247d-6d(a)(1). For example, the FAC details infection control measures and procedures including symptom checking, staff monitoring and screening, and limiting visitation ....In other places, the FAC directly draws upon the use (and in some case, misuse) of PPE .... The FAC also details screening measures employed by [Defendants] related to certain professional services provided within the facility. These allegations of use and misuse of PPE and the infection control measures directly relate to covered countermeasures within the meaning of the PREP Act.

*Id.,* at *21.

### B.  Plaintiffs' Claims Fall Within the Purview of the PREP Act

30. Here, based on the face of Plaintiffs' Complaint, the totality of the allegations made therein and the logical impact of its most central allegations, the PREP Act is implicated by Plaintiffs'

10

claims against Defendants as "covered persons" engaged in "recommended activities" under the Act.

31. Defendants, GRAND VILLA OF DELRAY EAST and JSMGV MANAGEMENT COMPANY, LLC, are "covered persons" under the PREP Act because their assisted living and memory care facility is licensed by the State of Florida. *See* 42 U.S.C. § 247d-6d(i)(2); Advisory Opinion on the PREP Act, available at https://www.hhs.gov/sites/default/files/prepact-advisory-opinion-april-14-2020.pdf; AO 20-04.

32. Defendants meet the requirements of a "program planner" of countermeasures under the PREP Act, and they are also "qualified persons who prescribed, administered or dispensed" a countermeasure under the PREP Act. *Id.* Specifically, Defendants were acting as "program planners" that supervised the infection control program, under which FDA-approved PPE, such as face shields and masks, gloves, and gowns, as well as diagnostic countermeasures, sanitizers and disinfectants, were distributed and administered to staff and patients of the facility in an effort to diagnose, mitigate, and prevent COVID-19. Further, Defendants' employees and affiliates were acting as employees of a "program planner" that supervised and administered the infection control program that provided and administered FDA approved countermeasures among patients and staff. Defendants' employees also were also acting as "qualified persons" under 42 U.S.C. § 247d-6d because the employees were authorized to administer, deliver, and use FDA covered countermeasures, such as PPE and FDA approved COVID-19 devices and diagnostic tests, to diagnose and prevent COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom. *See* AO 20-04.

33. Because Defendants acted in their statutory role as program planners to make reasonable choices in using and allocating covered countermeasures, managing the infection control

program, prioritizing the administration or use of covered countermeasures, and following applicable guidance, all of their actions, as well as any omissions, fall under the PREP Act. *See Garcia,* at *20-21 (noting that "OGC confirms that senior living communities are covered persons under the PREP Act because they are 'program planners'") (citing August 14, 2020 OGC Guidance Letter).

34. Plaintiffs' claims fall within the scope of the PREP Act as they are "claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(1) (2018). Plaintiffs' claims arise out of Defendants' administration, allocation, use, and supervision of use, of COVID-19 countermeasures in response to the COVID-19 pandemic. Plaintiffs challenge the adequacy of these countermeasures that Defendants used in fighting against COVID-19, specifically with respect to Defendants' use, misuse, allocation and administration of PPE and implementation of segregation and isolation measures, which allegedly "caused" Ms. Schleider to contract COVID-19.

35. Plaintiffs' allegations largely focus on the Defendants' negligent supervision of how residents and staff used the countermeasures which were provided by Defendants. Among the allegations, Plaintiffs allege Defendants were negligent by:

(1) Failing to intervene when residents were observed improperly wearing masks such as below their chin;

(2) Failing to ensure that PPE provided to staff was properly used and/or changed between resident interactions; and

(3) Failing to ensure all staff used and were trained on the use of provided PPE.

(*See* Compl. ¶45, 46, 47, 48, 49, 50, 55, and 56).

36. Plaintiffs' claims are, therefore, covered under the PREP Act. 42 U.S.C. § 247d6d(a)(1) and are removable to federal court under the complete preemption doctrine.

## II. FEDERAL QUESTION JURISDICTION ALSO EXISTS PURSUANT TO THE *GRABLE* DOCTRINE.

37. HHS, by and through its Fourth Amended Declaration and Advisory Opinion 21-01, also confirms that the PREP Act confers a separate, independent grounds for federal question jurisdiction under the *Grable* doctrine. *See* Advisory Opinion 21-01 at p. 4–5, *discussing Grable,* 545 U.S. at 312.

38. Advisory Opinion 21-01 states that "ordaining the metes and bounds of PREP Act protection in the context of a national health emergency necessarily means that the case belongs in federal court." *Id.* at p. 5. HHS provides that "there are substantial federal legal and policy…interests within the meaning of [the *Grable* doctrine] in having a unified, whole-of-nation response to the COVID-19 pandemic among federal, state, local, and private-sector entities." *Id.* (*quoting* 85 Fed. Reg. at 79, 197).

39. HHS further states that: "Congress delegated to [the Secretary] the authority to strike the appropriate Federal-state balance with respect to particular covered countermeasures through PREP Act declarations."

40. HHS's interpretation of *Grable* is consistent with the Supreme Court's long-standing rule "that in certain cases federal question jurisdiction will lie over state-law claims that implicate federal issues." *Grable,* 545 U.S. at 312. "The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.*

41. The *Grable* court determined that there is no single test for determining whether an embedded federal issue exists, but that, in general, a two-step process determines whether a state law claim "arises under" federal law: (1) the state law claim must necessarily raise a stated federal issue that is actually disputed and substantial; and (2) federal courts must be able to entertain the state law claims "without disturbing a congressionally approved balance of state and federal judicial responsibilities." 545 U.S. at 314. *See also Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 US 804, 808 (1986).

42. Here, both prongs are satisfied. First, Plaintiffs bring claims as a result for Defendants' alleged use or administration (or nonuse or non-administration) of covered countermeasures in connection with the care and treatment of Ms. Schleider, which necessarily implicates disputed and substantial federal issues. *See* §247d-6d.

43. Second, as confirmed Advisory Opinion 21-01 and the HHS Declaration, the PREP Act expresses a clear intention to supersede and preempt state control of the very issues raised by Plaintiff, *i.e.,* issues concerning Defendants' conscious decisions when to use or administer (or not) covered countermeasures, including COVID-19 PPE and diagnostic testing. A substantial and disputed federal issue regarding the application of the PREP Act to Plaintiffs' claims therefore necessarily exists, and must be resolved by this Court to ensure the uniform and appropriate application of the PREP Act.

44. Thus, the federal legal and policy issues described in the Fourth Amended Declaration and the recent HHS Advisory Opinion control and authorize this Court to retain this action.

### III.  FEDERAL QUESTION JURISDICTION EXISTS UNDER 28 U.S.C. §1442(a)(1)

45. 28 U.S.C. §1442(a)(1) permits removal when a defendant is sued for acts undertaken at the direction of a Federal Officer. This is to be broadly construed in favor of a federal forum. *See In*

14

*re Commonwealth's Motion to Appoint Counsel Against or Directed to Def Ass'n of Phila.*, 790 F.3d 457 (3rd Cir. 2015).

46. The case is removable pursuant to §1442(a) because (1) Defendants are "persons" within the meaning of the statute; (2) Plaintiffs' claims are based upon Defendants' conduct "acting under" the United States, its agencies, or its officers; (3) Plaintiffs' claims are "for, or relating to" an act under color of federal office; and (4) Defendants raise a "colorable federal defense" to Plaintiffs' claims. *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 811 (3d Cir. 2016). All requirements for removal under §1442(a)(1) are therefore satisfied here.

47. The "acting under" requirement, like the federal removal statute overall, is to be "liberally construe[d]" to cover actions that involve "an effort to assist, or to help carry out, the federal supervisor's duties or tasks." *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012) (quoting *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142 (2007)); *see also Defender Ass'n,* 790 F.3d 457, 468 (2015). To satisfy the "acting under" requirement, "a private person's actions 'must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior.'" *Watson*, 551 U.S. at 152. Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813.

48. Instead, a specific instruction from a federal officer, or a detailed regulation to compel specific conduct satisfies the "acting under" requirement. *See Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d. 387 (5th Cir. 1998). "The hurdle erected by this requirement is quite low." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008). Moreover, Defendants must simply "demonstrate that the acts for which they are being sued . . . occurred because of what they were

asked to do by the Government." *Id.* And in determining whether a causal connection exists, the Court is to give credit to Defendants' theory of the case. *Id.*

49.     For the purposes of removal, the defense must be "colorable" and need not be "clearly sustainable" as the purpose for the removal statute is to secure that the validity of the defense may be tried in federal court. *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).

50.     The Healthcare and Public Health Sector is a critical infrastructure within which the Federal Government works with owners and operators to promote national safety. *See* Presidential Policy Directive— Critical Infrastructure Security and Resilience, The White House (Feb. 12, 2013), available at https://obamawhitehouse.archives.gov/the-press-office/2013/02/12/presidential-policy-directive-critical-infrastructure-security-and-resil; *see also Fields v. Brown*, 2021 WL 510620, *3 (ED Tex. Feb. 11, 2021) (finding a defendant's designation as critical infrastructure sufficient for federal officer jurisdiction where the defendant was, *inter alia*, closely monitored by federal agencies.)

51.     The Secretary of HHS bolsters federal, state, and local cooperation with the private sector by providing immunity to those program planners who are "authorized in accordance with the public health and medical emergency response of the Authorities Having Jurisdiction ("AHJ")...to prescribe, administer, deliver, distribute or dispense the Covered Countermeasures...." *See* Fourth Amendment, 85 Fed. Reg. at 19195. An "AHJ" under the PREP Act is "the public agency or its delegate that has legal responsibility and authority for responding to an incident, based on political or geographical (e.g., city, county, tribal, state, or federal boundary lines) or functional (e.g., law enforcement, public health) range or sphere of authority." Initial Declaration, 85 Fed. Reg. at 15202.

52.     The PREP Act extends its statutory protections to those working as part of the nation's critical infrastructure with and under the directive guidance of AHJs, such as Defendants, in the face of a national public health emergency. *See* §247d-6d(i)(6) and (8) and Advisory Opinion on The Prep Act and the Declaration at 2, 6 (May 19, 2020) (providing HHS Authorities Having Jurisdiction ("AHJ") can extend acts covered by immunity).

53.     Such AHJs include: HHS, Food and Drug Administration (FDA), Centers for Disease Control ("CDC"), Florida Department of Public Health and the Palm Beach County Health Department, all directing the Defendants here. *See* Initial Declaration, 85 Fed. Reg. at 15202 (defining "AHJs" as public agencies or their delegates. A "program planner" includes entities, such as senior assisted living facilities and nursing homes, that supervise or administer a countermeasure use program or provides a facility to administer or use countermeasures. *See* §247d-6d(i)(6). Program planners, such as Defendants are to be afforded the statutory protections of an exclusive federal forum, an exclusive federal cause of action and immunities for suit and liability. §§247d-6d(a)(1), (d)(1), (e)(1).

54.     Plaintiffs acknowledge that Defendants were subject to the regulations and mandates of both the State of Florida and the Centers for Disease Control. (*See* Compl. ¶¶ 22, 23, 24, 26, 27, and 28).

55.     Defendants worked throughout the pandemic as members of the nation's critical infrastructure under the supervision and specific direction of the United States government to follow evolving state and federal mandates and guidelines from the Centers for Disease Control ("CDC"), with respect to: 1) infection control policies and procedures; 2) PPE procurement and allocation; 3) admission and discharge of residents; 4) managing visitors and outside persons; 5) staff allocation and retention; and 6) isolation protocols to mitigate and prevent the spread of

COVID-19 among residents and staff.[3] These guidelines created "strong government intervention" which went beyond the "mere auspices of federal direction" due to the unprecedented pandemic. *See Fung v. Abex Corp.*, 816 F. Supp. 569, 572 (N. D. Cal. 1992).

56. The Complaint challenges Defendants' measures in response to the COVID-19 pandemic. However, these measures were implemented at the express direction of federal officers and federal AHJs. Any dispute about the scope of Defendants' authority to implement those measures under the federal directives "is one for the federal—not state—courts to answer." *Isaacson*, 517 F.3d at 138 (federal courts must resolve "whether the challenged act was outside the scope of Defendants' official duties, or whether it was specifically directed by the federal Government") (*citing Willingham*, 395 U.S. at 409). Moreover, Defendants have a colorable defense to any actions regarding these COVID-19 covered countermeasures used in response to these federal directions pursuant to the PREP Act. as previously explained herein.

## IV. CONCLUSION

Because Plaintiffs' claims are completely preempted by federal law, raise embedded federal questions pursuant to the *Grable* doctrine, and question the acts taken by members of the

---

[3] *See, c.f.* CMS, Press Release "CMS Prepares Nation's Healthcare Facilities for Coronavirus Threat" (February 6, 2020) (available at https://www.cms.gov/newsroom/press-releases/cms pre-pares-nations-healthcare-facilities-coronavirus-threat); CMS Update and Interim Guidance on Outbreak of 2019 Novel Coronavirus (February 1, 2020) (available at https://emergency.cdc.gov/han/HAN00427.asp); CMS Guidance for Infection Control and Prevention Concerning Coronavirus (COVID-19): FAQ's and Considerations for Patient Triage, Placement and Hospital Discharge (March 4, 2020) (available at https://www.cms.gov/files/document/qso-20-13-hospitalspdf.pdf-2); CMS Guidance for use of Certain Industrial Respirators by Health Care Personnel (March 10, 2020) (available at https://www.cms.gov/files/document/qso-20-17-all.pdf); HHS, Emergency Use Declaration, Federal Register/ Vol. 85, No. 47 (March 10, 2020) (available at https://www.govinfo.gov/content/pkg/FR-2020-03-10/pdf/2020-04823.pdf); CMS Guidance for Infection Control and Prevention of Coronavirus Disease 2019 (COVID-19) in Nursing Homes (Revised) (March 13, 2020) (available at https://www.cms.gov/files/document/qso-20-14-nh-revised.pdf); CMS, COVID-19 Long-Term Care Facility Guidance (April 2, 2020) (available at https://www.cms.gov/files/document/4220-covid-19-long-term-care-facility-guidance.pdf); CMS, Press Release "Trump Administration Announces New Nursing Homes COVID-19 Transparency Effort" (April 19, 2020) (available at https://www.cms.gov/newsroom/press-releases/trump-administration-announces-new-nursing-homes-covid-19-transparency-effort).

nation's critical infrastructure under the authorization of a Federal officer, those claims should be removed to federal court. Removal to this Court is therefore proper under 28 U.S.C. §1441.

WHEREFORE, Defendants respectfully request that this action be removed to the United States District Court for the Southern District of Florida, Palm Beach Division, pursuant to 28 U.S.C. §§ 1331 and 1446.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court using CM/ECF on April 6, 2021, upon Spencer T. Kuvin, Esq, LAW OFFICES OF CRAIG GOLDENFARB, P.A., *Counsel for Plaintiffs* (schleider7403394@projects.filevine.com skuvin@800goldlaw.com, lweir@800goldlaw.com).

**Hall Booth Smith, P.C.**

*/s/ Jodi Barrett*

Jodi G. Barrett, Esquire
FBN: 0901156
*Counsel for Defendants*
1400 Centrepark Blvd., Suite 400
West Palm Beach, FL 33401
T: 561-472-1020
F: 561-472-1021
jbarrett@hallboothsmith.com
tlatham@hallboothsmith.com
bbrostrom@hallboothsmith.com