# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 9:21-CV-80664
### Judge Dimitrouleas
### Magistrate Judge Matthewman

HOWARD SCHLEIDER and FELICE
VINARUB, as Co-Personal
Representatives for THE ESTATE OF
SARA SCHLEIDER, Deceased,

      Plaintiffs,

vs.

GVDB OPERATIONS, LLC, a Florida
Limited Liability Company d/b/a
GRAND VILLA OF DELRAY EAST and JSMGV
MANAGEMENT COMPANY, LLC, a Florida
Limited Liability Company,

      Defendants.

_____/

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

COME NOW Defendants, GVDB OPERATIONS, LLC, a Florida Limited Liability Company d/b/a GRAND VILLA OF DELRAY EAST and JSMGV MANAGEMENT COMPANY, LLC (hereinafter referred to as "Grand Villa"), and, pursuant to Southern District of Florida Local Rule 7.1(c), hereby files this Response in Opposition to Plaintiffs' Motion to Remand. Defendants show the Court as follows:

## I. INTRODUCTION

Plaintiffs' Motion for Remand is now moot, and this matter is due to be transferred to the United States District Court for the District of Columbia ("D.D.C."). By virtue of Plaintiffs' April 19, 2021 submission of a federal pre-litigation claim before the Public Readiness and Emergency Preparedness ("PREP") Act's Covered Countermeasure Process Fund ("CCPF"), this case falls squarely under the auspices of the PREP Act. *See generally* Def.s' Mot. for Immediate Transfer (Apr. 27, 2021). As such, Plaintiffs have determinatively invoked the exclusive PREP Act process

1

which must be litigated, if at all, in the D.D.C. *Id.* at 6–9. On that ground alone, the Plaintiffs' Motion to Remand is due to be DENIED.

Further, the PREP Act provides for: 1) a comprehensive federal pre-litigation process before the CCPF (*see* 42 U.S.C. § 247d-6e); 2) an exclusive federal jurisdiction and an exclusive federal cause of action in the D.D.C. (*see* §§ 247d-6d(a); 247d-6d(e)(1) ); and, 3) suit and liability immunity from all other federal and state law claims caused by, arising out of, relating to, or resulting from the administration or use of a COVID-19 covered countermeasure (*see* 42 U.S.C. §247d-6d(a)(1) ("[T]he sole exception to the immunity from suit and liability…shall be for an exclusive Federal cause of action."). Accordingly, the PREP Act is a complete preemption statute. *See Beneficial National Bank v. Anderson*, 539 U.S. 1, 8 (2003).

Complete preemption is essential to serving the PREP Act's purpose of allowing the federal government to quickly respond to national public health emergencies by mobilizing and coordinating private sector participants, such as Defendants. *See* §§ 247d-6d, 247d-6e. To effectuate this purpose, Congress established a comprehensive alternative claims and litigation process with detailed provisions for administrative exhaustion and an exclusive federal cause of action with a singular federal forum in place of liability under fifty states' laws in fifty states' court systems. *See* § 247d-6e. Plaintiffs' state law claims, which question Defendants' use and administration of covered countermeasures and the decisions related thereto, are completely preempted by the PREP Act. These claims also are completely supplanted by the Plaintiffs' choice of a forum before the CCPF, and subsequently the D.D.C., should Plaintiffs pursue litigation. No remedy is available for state claims. *See* §247d-6d(a)(1).

Four factors require the exercise of federal subject matter jurisdiction in the D.D.C.:

1) Congress set up an extensive federal administrative and judicial alternative claims process with an express exclusive federal cause of action and exclusive federal forum;

2) Congress has decreed that PREP Act claims arising from the administration and use of covered countermeasures are barred from state and federal lawsuits and liability, except as exclusively provided by the PREP Act alternative claims process;

3) Prior district courts remanding similar COVID-19 claims did not have a circumstance where the plaintiff had admitted to coverage under the PREP Act by selecting the CCPF claims process and the D.D.C. forum for any subsequent litigation; and,

4) Prior district court remand opinions have been abrogated by controlling United States Department of Health and Human Services ("HHS") directives or otherwise are wrongly decided.

## II. STATEMENT OF FACTS

### A.    Procedural History and Factual Underpinnings of this Case

Plaintiffs filed this action on March 12, 2021, in the Circuit Court of Fifteenth Judicial Circuit in and for Palm Beach County, Florida. The Complaint amounts to allegations that Defendants' purported negligent operation of a covered countermeasure program[1] and covered countermeasure facility.[2] led to injuries as a result of the COVID-19 public health emergency. *See generally* Compl. On April 6, 2021, Defendants removed this action on the basis of complete preemption by federal law, substantial, embedded question of federal law, and federal officer jurisdiction. *See generally*, Def.s' Notice of Removal (Apr. 6, 2021). On April 13, 2021, Defendants filed their Motion to Dismiss or, in the Alternative, Motion to Transfer Venue based on Plaintiffs' failure to exhaust their administrative remedies or file in the exclusive jurisdiction of the D.D.C. *See generally* Def.s' Mot. to Dismiss (April 13, 2021). Plaintiffs filed the subject Motion to Remand based largely on now abrogated case law. *See generally* Pltf.s' Mot. to Remand (April, 16, 2021).

As confirmed by the allegations in the Complaint, including, but not limited to mask use among residents and staff, Defendants' assisted living facility ("Grand Villa") implemented a covered   countermeasure   program[3]   to   dictate   the   use   and   administration   of   covered

---

[1] A "countermeasure program" is the management and operation of a plan for the provision of COVID-19 covered countermeasures, including "decisions and actions" relating to countermeasure activities. *See* Declaration Under the PREP Act for Medical Countermeasures Against COVID-19 ("Initial Declaration"), 85 Fed. Reg. 15198, 15200 (Mar. 10, 2020) (barring claims against retail drugstore that provides for the administration or distribution of countermeasures).

[2] A "countermeasure facility" is a location for providing countermeasures. *See* Amendment Four, 85 Fed. Reg. at 15200. This specifically includes senior assisted living facilities, like Arbor Terrace. (HHS RESPONSE LETTER p. 1); and Initial Declaration, 85 Fed. Reg. at 15200 (barring suit and liability against retail drugstore providing a location for the administration and distribution of countermeasures).

[3] A "countermeasure program" is the management and operation of a plan for the provision of COVID-19 covered countermeasures, including "decisions and actions" relating to countermeasure activities. *See* Declaration Under the PREP Act for Medical Countermeasures Against COVID-19 ("Initial Declaration"), 85 Fed. Reg. 15198, 15200 (Mar. 10, 2020) (barring claims against retail drugstore that provides for the administration or distribution of countermeasures).

countermeasures[4] within their covered countermeasure facility[5] to prevent and mitigate the spread of COVID-19 pandemic. *See* Compl. ¶ 11 (identifying Grand Villa as a licensed assisted living facility); ¶¶ 13; 45(i)(i), (j)(i), (j)(v), (k)(iv), (l), (n), (p); 47(b), (c), (allegations of resident mask use, albeit misuse/untimely use); ¶¶ 45(l)(iii), (n); 48(a), (b), 49(d), (l) (allegations of staff mask use); ¶ 65(b) (noting training on hand sanitizer use). Despite Defendants' infection control program, then resident Ms. Sara Schleider ("Decedent Schleider") reportedly contracted COVID-19 and died on June 29, 2020. *Id.* at ¶ 13 (Plaintiffs do not state Decedent Schleider's cause of death).

Exhibiting the PREP Act's application to their allegations, Plaintiffs filed a claim with the PREP Act CCPF on April 19, 2021. Defendants promptly thereafter moved to have this case transferred to the D.D.C. pursuant to 28 U.S.C. §§ 1631 and/or 1406(a).

**B.      Legislative History of the PREP Act**

The PREP Act is just one component of HHS's broad authority under the larger Public Health Service Act ("PHSA") (Title 42 of the U.S.C., Ch. 6A). In establishing the PHSA Congress entrusted HHS to administer public health functions, including federal-state cooperation. 42 U.S.C. § 202; Title 42 of the U.S.C., Ch. 6A, subchapter 2, part B. In this role, Congress granted the Secretary of HHS wide authority to take the actions necessary to implement a plan to control epidemics of any disease, including "providing for the cooperative planning between the Service and public and private community health programs and agencies…" 42 U.S.C. § 243(c).[6]

The PREP Act is a subset of HHS's broad authority of federal-state coordination in times of national health crisis. *See* Title 42 of the U.S.C., Ch. 6A, subchapter 2, part B. Congress reinforced HHS's authority under the PREP Act by charging HHS with the duty to issue a defining Declaration that controls the scope of the PREP Act's protections in the face of a particular national

---

[4] A "covered countermeasure" is a preventative measure that mitigates or prevents the transmission of COVID-19. See § 247d-6d (i)(1). These include PPE, such as face masks, respirators, gloves, and gowns, as well as thermometers, hand sanitizer, and COVID-19 tests, all countermeasures invoked by Plaintiffs' Complaint. *See* Fourth Amendment to the Declaration Under the PREP Act for Medical Countermeasures Against COVID-19 and Republication of the Declaration, 85 Fed. Reg. 79190, 79194 (Dec. 3, 2020) ("Fourth Amendment").

[5] A "countermeasure facility" is a location for providing countermeasures. *See* Fourth Amendment, 85 Fed. Reg. at 15200. This specifically includes senior assisted living facilities, like Arbor Terrace. (HHS RESPONSE LETTER p. 1); and Initial Declaration, 85 Fed. Reg. at 15200 (barring suit and liability against retail drugstore providing a location for the administration and distribution of countermeasures).

[6]"Service" refers to the Public Health Service created within HHS by Title 42, Chapter 6A. *See* 42 U.S.C. §§ 201(a), 202.

health emergency. § 247d-6d(a)(1), (b). Indeed, the plain language of the PREP Act is purposely non-specific so as to provide HHS with the maximum delegated authority to identify the unique public health threat, the means and modality by which the nation will address the threat, the HHS partners to be mobilized, and the breadth of PREP Act protections to be provided to these partners. Given the unique authority granted to HHS under the PHSA and specifically under the PREP Act, the statutory language of the PREP Act cannot be interpreted in isolation but must be analyzed in conjunction with the HHS's COVID-19 directives.

### III. <u>ARGUMENT AND CITATION OF AUTHORITY</u>

**A.**     <u>Plaintiffs' Filing with the CCPF Moots Their Motion for Remand</u>

Plaintiffs' April 19, 2021 application for relief under the CCPF expressly invokes the PREP Act's pre-litigation administrative remedy and thus necessarily implicates the PREP Act's exclusive jurisdiction in the D.D.C. Therefore, Plaintiffs' CCPF application warrants either dismissal or immediate transfer to the D.D.C.—not remand. *See, e.g., Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 803 (1988) ("Upon concluding that it lacked jurisdiction, the [court] had authority, under 28 U.S.C. § 1631, to make a single decision—whether to dismiss the case or…to transfer it to a court…that has jurisdiction); *George Kabeller, Inc. v. Busey,* 999 F.2d 1417, 1422 (11th Cir. 1993) ("[T]he appropriate procedure for a district court to follow when it determines that it lacks jurisdiction is to transfer the case to a court with jurisdiction" pursuant to 28 U.S.C. § 1631); *Parker v. King*, 935 F.2d 1174, 1178 (11th Cir. 1991) (transferring an appeal under 28 U.S.C. § 1406(a) where Congress established exclusive federal jurisdiction in the Court of Claims and any appeal arising therefrom must go to the Federal Circuit, noting the designated venue "must hear" the case); *see also* Def.s' Mot. for Immediate Transfer (discussing transfer where a court lacks jurisdiction) and Def.s' Mot. to Dismiss (discussing dismissal where a court lacks jurisdiction).

At the very least, Plaintiffs' application to the CCPF moots their Motion to Remand. Plaintiffs' application for compensation as a result of the use or administration of a covered countermeasure is made under "penalty of fines, imprisonment, and any other remedy…" *See* **Exhibit A**, Countermeasures Injury Compensation Program Request for Benefits Form. Thus, Plaintiffs may not argue in this Court that Ms. Schleider's death was not caused by or relating to the use or administration of covered countermeasures.

**B.**     **The CCPF Pre-Litigation Process and the D.D.C. Litigation Process Are the Exclusive Remedies and Forum Allowed to Plaintiffs**

No state law claims exist for claims arising from the use and administration of COVID-19 countermeasures. §§ 247d-6d(a)(1) and (b)(8). The only remedy is a pre-litigation administrative claim before the CCPF, followed (if applicable) by a litigation claim in the D.D.C. *See* §§ 247d-6e(d)(1) ("**Exhaustion**…a covered individual may not bring a civil action…unless such individual has exhausted such remedies as are available under [the CCPF]"), (4) ("**Exclusivity** the [CCPF] shall be exclusive of any other civil action"), and (5) ("**Election**" "the individual has an election to accept the compensation or bring an action [in the D.D.C.]").

The PREP Act litigation process provides for an "exclusive Federal cause of action" in the "Exclusive Federal jurisdiction" of the D.D.C. *See* 42 U.S.C. §§ 247d-6d(d)(1) ("***sole*** exception to suit and liability of covered persons set forth [by the monetary fund] ***shall be*** for an ***exclusive Federal*** cause of action") (emphases added), (e)(1) ("**Exclusive Federal Jurisdiction**" that this "exclusive Federal cause of action" be filed "***only*** in the United States District Court for the District of Columbia") (emphases added), and 247d-6e(d)(1), (4), (5). Moreover, the PREP Act establishes procedural requirements for those claims, leaving no doubt that Congress intended to provide a comprehensive alternative litigation process in the D.D.C. for those claims arising from or related to PREP Act countermeasures. *See* §§ 247d-6d(c)(1) (a more stringent liability standard); (e)(2) (the federal forum will apply non-preempted state law that otherwise would be applicable to such a claim); (e)(4)(A–C) (pleading requirements for complaint); (e)(5), (6) (provides for a three-judge panel and process for discovery); and (e)(7), (8) (parameters for recoverable damages); *see also* HHS, Advisory Opinion on the PREP Act and the March 10, 2020 Declaration under the Act, p. 2 (May 19, 2020) (PREP Act "immunity covers claims for loss sounding in tort or contract" and "PREP Act immunity must be read in light of the PREP Act's broad, express-preemption provision");[7] and § 247d-6d(b)(8) (a total preemption of conflicting state law). Those litigation claims not barred by immunity are required to be brought only in the D.D.C., and not in this Court.

---

[7] The Fourth Amendment formally incorporated HHS's Advisory Opinions into the Declaration. 85 Fed. Reg at 79195. As such, they are entitled to *Chevron* "controlling weight" deference. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–44 (1984); *see also* 85 Fed. Reg. at 79195 ("This Declaration is a 'requirement' under the PREP Act"). Any Advisory Opinions not formally incorporated into Amendment Four are entitled to *Skidmore* "respect" to the extent they interpret the PREP Act. *See Christensen v. Harris Cty.*, 529 U.S. 576 (2000). And, to the extent the HHS Advisory Opinions interpret HHS's own language in its own Declaration, those Advisory Opinions are entitled to *Auer* controlling deference. *See Auer v. Robbins*, 519 U.S. 452, 461 (1977) (stating

C.    **Previous Remands Are Inapplicable and Are Legally Faulty**

    1.    *History of Remand Opinions from District Courts*[8]

    Non-binding district court cases have remanded certain COVID-19 countermeasure claims on ever-evolving lines of reasoning. Each has been faulty, and most have been legally declared to be abrogated or superseded by controlling congressional delegated agency authority. Nevertheless, some courts continue to follow discredited and erroneous interpretations of the PREP Act while others have evolved to another equally erroneous line of reasoning. This litany of erroneous remands is similar to the remand circumstances in *In re WTC Disaster Site*, 414 F.3d 352 (2d Cir. 2005), wherein the United States Court of Appeals for the Second Circuit held that Congress declared a strong public policy directive that all workplace injury claims related to the national tragedy of September 11, 2001 would have "exclusive federal jurisdiction" in the Southern District of New York and would be subject to an administrative and litigation hybrid system nearly identical to the PREP Act cause of action and remedy statute. *See* 414 F.3d at 361 (interpreting the Air Transportation Safety and System Stability Act ("ATSSSA").[9] Like the COVID-19 PREP Act cases, some 26 cases ATSSSA cases were remanded in error, before, through legal happenstance, the Second Circuit spoke to the issue and corrected the district court, noting that the ATSSSA provided for an exclusive federal forum and  exclusive administrative and litigation scheme, and otherwise preempted all other state and federal claims. *WTC*, 414 F.3d at 373–75. Accordingly,

---

an agency's interpretation of its own regulations are controlling unless "plainly erroneous or inconsistent with the regulation.").

[8] All of these cases are distinguished as none involved claims also pending before the CCPF.

[9] There are 13 federal statutes that create jurisdictional (or "complete") preemption. Many provide administrative as well as litigation remedies: These include the ATSSSA (*In re WTC Disaster Site*, 414 F.3d 352) (no-fault compensation program or suit in the SDNY); the Bankruptcy Code (*In re Miles*, 430 F.3d 1083 (9th Cir. 2005)) (exclusive federal suit); the Carmack Amendment to the Interstate Commerce Act (*see, e.g., Smallwood v. Allied Van Lines, Inc.*, 660 F.3d 1115 (9th Cir. 2011)) (administrative claims process or federal or state suit); the Interstate Commerce Commission Termination Act (*see, e.g., Elam v. Kansas City Southern Ry. Co.*, 635 F.3d 796 (5th Cir. 2011)) (administrative complaint or suit in federal court); the Copyright Act (*see, e.g., Spear Marketing, Inc. v. BancorpSouth Bank*, 791 F.3d 586) (administrative claim or suit in federal court); the Federal Communications Act (*see, e.g., Bastien v. AT&T Wireless Services, Inc.*, 205 F.3d 983 (7th Cir. 2000)) (administrative remedy and state or federal suit; the Federal Deposit Insurance Act (*Vaden v. Discover Bank*, 556 U.S. 49 (2009)) (suit in federal court);the National Labor Relations Act (*see, e.g., Price v. Union Local 25*, 787 F. Supp. 2d 63 (D.D.C. 2011)) (administrative board and allowing state court suit where the board declines jurisdiction); and the Securities Litigation Uniform Standards Act (SLUSA) (*see, e.g., Brockway v. Evergreen Intern. Trust*, 496 Fed. Appx. 357 (4th Cir. 2012)) (express removal provision and bar of specified state actions); Labor Management Relations Act (LMRA) (*Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 23 (1983)) (suit in federal court or Federal Mediation and Conciliation Service); the Employee Retirement Income Security Act of 1974 (ERISA) (*Metro. Life Ins.. v. Taylor*, 481 U.S. 58 (1987)) (exclusive federal suit); National Bank Act (Beneficial Nat'l Bank, 539 U.S. 1, 8 (2003)) (suit with no reference to exclusive federal jurisdiction).

the *WTC* court held that the ATSSSA provided for complete preemption, and directed that all claims were to be brought only in the exclusive federal forum of the S.D.N.Y.[10]

The *Garcia v. Welltower OpCo Group LLC*, No. 8:20-cv-02250 (C.D. Cal. Feb. 10, 2021), has correctly applied the language of the PREP Act statute, honored the intent and language of Congress, and respected the controlling deference the Supreme Court requires be given to HHS Declarations, Advisory Opinions, and Recommendations. *See Garcia*, at p. 9–11, 13–15; *see also Chevron, U.S.A., Inc. v. Natural Resources Defense, Inc.*, 467 U.S. 837, 843–44 (1984); *U.S. v. Mead Corp.*, 533 U.S. 218, 231 (2001) (stating notice-and-comment rulemaking is not a prerequisite to *Chevron* deference); *Cable & Telecommunications Ass'n v. Brand X Internet Services*, 545 U.S. 967, 980 (2005) ("Chevron requires [deference] to an agency's construction, even if it differs from what the court believes to be the best interpretation"); *Auer v. Robbins*, 519 U.S. 452, 461 (1977) (stating an agency's interpretation of its own regulations are controlling unless "plainly erroneous or inconsistent with the regulation"); *Heimmermann v. First Union Mortgage Corporation*, 305 F.3d. 1257, 1260, 1262 (11th Cir. 2002) (an agency's clarification is "generally given much weight" unless "patently inconsistent" with prior interpretations, while agency interpretations are given the full force of law).

The journey of error resulting from almost all COVID-19 remands to date, and the reasoning why *Garcia* is the only authority to be followed, can be summarized as follows.

### 2.     *Misdirected "Inference"*

Upon a Motion to Remand, jurisdiction is construed narrowly with doubts resolved in favor of the plaintiff. *See Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998). The purpose of this is to balance the competing interests of the federal and state systems of our nation. *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) ("Because removal

---

[10] One of the most extreme examples of the mistaken inference application discussed *infra*, p. 8, is *Shapnik v. Hebrew Home for the Aged at Riverdale*, *1:20-cv-06774-LJL* at *20–23 (S.D.N.Y Apr. 26, 2021), which broadly misconstrues the ATSSSA and should not be followed. *Shapnick* attempts to distinguish the Second Circuit Court's correction of 26 erroneous remand rulings under the ATSSSA, which is nearly identical to the PREP Act in construct. *Shapnick* errs in: 1) missing that the ATSSSA, like the PREP Act administrative process, has an election opportunity for claimants to proceed to litigation in the D.D.C. (*see* § 247d-6e(d)(5)); 2) missing that the ATSSSA, like the PREP Act, has an express provision that adopts the substantive law of the state from which it hails in a choice of law provision (*see* § 247d-6d(2)(2)); 3) completely ignoring the first and most prominent of two PREP immunity/preemption provisions, when the ATSSSA only has one (*see id.* at (a)(1) and (b)(8)); 4) rewriting the PREP Act to imply that Congress intended that it be an ***additional*** remedy to all state court causes of action, which defies the text of the PREP Act (*id.*); and 5) finding that because there are state court actions that would otherwise provide relief for death cases such as these, Congress did not express an intent to circumvent the state courts' "concurrent jurisdiction", when that is exactly what Congress did in the PREP Act (*id.*).

jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly"). However, the trial court is bound not to be misguided by the "artful pleading" of a truly federal claim. *See*, *e.g. Beneficial Nat'l Bank*, 539 U.S. 1. Further, the discretion to exercise the judicial tool of "inference" is likewise bound by logic and reason: Black's Law Dictionary defines an "inference" as a "conclusion reached by considering other facts and deducing a logical consequence from them". Black's Law Dictionary (11th ed. 2019) (also defined as "a process of thought").

In other words, an inference is not a mission at all costs to remand. *See also Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 770 (11th Cir. 2010) (a district court does not have to "suspend reality or shelve common sense in determining whether the face of a complaint, or other document, establishes the jurisdictional amount") (internal cits. omitted). It is a dutiful interpretation of Congress' language and intent of whether a federal forum is required, and here, under the PREP Act, it most certainly is. Notably, Congress also has determined it is HHS that is to weigh the balance of competing federal and state judicial interests by defining the breadth of application of protections offered by the PREP Act. *See* Fourth Amendment to the Declaration Under the PREP Act for Medical Countermeasures against COVID-19, 85 Fed. Reg. 79190, 79194 (Dec. 9, 2020) ("Fourth Amendment") ("Through the PREP Act, Congress delegated to [HHS's Secretary] the authority to strike the appropriate Federal-state balance with respect to particular Covered Countermeasures through PREP Act declarations."); *see also* 42 U.S.C. §247d-6d(b)(7) ("No court of the United States, or of any State, shall have subject matter jurisdiction to review, whether by mandamus or otherwise, any action by the Secretary under this subsection").

Contrary to Congress' codified policy requiring HHS to provide a national coordinated response to calamitous disease and public health emergencies, district courts have improperly substituted their own policy judgment and determined that state court actions in state court forums are to be maintained as ***additional*** mechanisms for relief despite: 1) Congress's multiple recitations that state law is to be preempted and Defendants are to be immuned from state law (*see* §§ 247d-6d(a)(1) and (b)(8)); and, 2) despite Congress's statutory directions of an "exclusive federal forum" and a "sole federal cause of action" (*see* §§ 247d-6d(d)(1), (e)(1)). This improper judicial public policymaking is detrimental to the immunity and alternative administrative and litigation scheme Congress provided in order to marshal private partner resources essential to combating COVID-19. *See* Declaration Under the PREP Act for Medical Countermeasures Against COVID-19, 85

Fed. Reg. 15198,15198 (Mar. 17, 2020) ("Initial Declaration) (issuing a declaration under the PREP Act to provide a "whole-nation" response to fighting the pandemic at a time when little was known about COVID-19); *see also* HHS, ADVISORY OPINION 20-04 ON THE PREP ACT AND THE SECRETARY'S DECLARATION UNDER THE ACT p. 1, 3 (Oct. 23, 2020) ("ADVISORY OPINION 20-04") ("[H]ealthcare professionals and healthcare companies that are part of a government response to the COVID-19 pandemic"); HHS RESPONSE LETTER p. 1 (Aug. 14, 2020) (declaring Senior Assisted Living Centers as "program planners" when they manage and operate a COVID-19 countermeasure plan and/or a COVID-19 countermeasure facility).

### 3. *District Court Error in Remands*

District court remands of COVID-19 countermeasure claims fall into several categories:

### a.   *Inapplicability of the PREP Act Due To Alleged Failure to Use a Countermeasure*

Ordinary negligence claims are made up of both acts and omissions. 3 Fed. Jury Prac. & Instr. § 120:02 (6th ed.), 3 Fed. Jury Prac. & Instr. § 120:02 (6th ed.) ("A person is negligent if the person … does something (or fails to do something) a reasonable person would recognize as creating an unreasonable risk"). Congress recognizes this in the current context by providing that "'willful misconduct'….denote[s] an act or omissions" (*see* 42 U.S.C. § 247d-6d (c)(1)(A)); "The Secretary…shall…restrict the scope of actions or omissions…that may qualify as 'willful misconduct'" (*id.* at (c)(2)(A)); providing defenses and exclusions for certain "acts or omissions" (*id.* at (c)(4), (5)); and requiring plaintiffs "plead[] with particularity" "each act or omission [that constitutes] willful misconduct" (*id.* at (e)(3)).

In early cases, district courts nonetheless allowed plaintiffs' "artful pleading" and use of the word "failure" in clear contravention of the actual text of the complaints to illogically be construed as the utter and complete absence of covered countermeasures, thus falling outside PREP Act, to-wit:

- Allegations of "[f]ail[ure] to take the proper steps to protect residents from COVID-19" did not invoke the PREP Act despite allegations that defendants allegedly provided a limited number of masks to registered nurses. *Maglioli v. Andover Subacute Rehabilitation Center I*, 478 F. Supp. 3d 518, 522, 532;

- Allegations of improper infection control (notwithstanding allegations of testing and symptom monitoring) did not invoke the PREP Act despite allegations of Defendants'

testing of decedent. *Hopman v. Sunrise Villa Cluver City*, 2:20-cv-07141-RGK-JEM at 1 (C.D. Cal. Aug. 25, 2020) and *Compl.* ¶¶ 45–47, 55.

- Allegations of "fail[ure] to take proper precautions to prevent the spread of COVID-19" did not invoke the PREP Act despite allegations of deficient PPE practices and scrutinizing the timing of COVID-19 testing that took place. *Martin v. Serrano Post Acute*, 2020 WL 5422949, at *2 (C.D. Cal. Sep. 10, 2020) and *Compl.* ¶ 3.

- Allegations of improper and inadequate protection did not implicate the PREP Act despite allegations that Defendant received masks that were stored instead of distributed. *Saldana v. Glenhaven Healthcare, LLC*, 2020 WL 67139095 at *1–2 (C.D. Cal. Oct. 14, 2020).

- Allegation of "fail[ure] to provide appropriate PPE … prior to April 2, 2020" did not implicate the PREP Act acknowledging PPE and COVID-19 testing would ultimately be provided. *Sherod v. Comprehensive Healthcare Management*, 2020 WL 6140474 at *2, 7–8 (W.D. Penn. Oct. 16, 2020) and *Compl.* ¶ 88.

- Allegations of "Staff failing to wear PPE" and criticisms of the timeliness of preventive countermeasures did not implicate the PREP Act. *See Fields v. Arbor Management Services, LLC*, 1:20-CV-02346-TCB at *8 (N.D. Ga. Oct. 29, 2020) and Compl. ¶¶ 31, 74; *see also Hendrix,* 1:20-CV-02326-MHC (N.D. Ga. Nov. 23, 2020), *B. Johnson,* 1:20-CV-02328-WMR (N.D. Ga. Dec. 1, 2020), *and E. Johnson*, 1:20-CV-02327-ELR (N.D. Ga. Jan. 22, 2021) (virtually identical complaints).

- Allegations of "forcing staff to reuse PPE" did not implicate the PREP Act. *Gunter v. CCRC OPCO-Freedom Square, LLC*, 2020 WL 8461513 at *2–4, (M.D. Fla. Oct. 29, 2020).

- Allegations of failure to "adequately" screen residents and staff did not implicate the PREP Act. *DeLeon v. Trinity Health Center*, 1:20-CV-945-RP at 7 (W.D. Tex. Dec. 22, 2020).

- Allegations of forcing staff to reuse PPE (*Compl.* ¶ 13(l)), failure to supply "proper" masks and gowns, and failure to conduct adequate testing (*id.* at 13(h)) did not implicate the PREP Act. *Smith v. Bristol at Tampa Rehabilitation and Nursing Center*, 2021 WL 100376 at *2 (M.D. Fla. Jan. 12, 2021) and *Compl.* ¶¶ 13(h), (l).

- Failing to instruct, train and/or monitor staff regarding the appropriate use of PPE did not implicate the PREP Act. *Grohmann v. HCP Prairie Village*, 2021 WL 308550 at *3, 18–21 (D. Kan. Jan. 29, 2021); *see also Bell*, 2021 WL 308156 (D. Kan. Jan. 29, 2021) and *Goldblatt*, 2021 WL 308158 (D. Kan. Jan. 29, 2021).

- Failing to ensure "all" health care professionals were provided a facemask and failure to adequately screen did not implicate the PREP Act. *Dupervil v. Alliance Health Operations*, 2021 WL 355137 at 2, 23–27 (E.D.N.Y. Feb. 2, 2021).

- Failure to provide adequate PPE and ensure PPE was properly utilized did not implicate the PREP Act. *McCalebb v. A.G. Lynwood*, 2021 WL 911951at *1, 5 (C.D.Cal. Mar. 1, 2021).

However, HHS has affirmatively stated that even "decision-making that leads to the non-use of covered countermeasures by certain individuals is the grist of program planning, and is expressly covered by PREP Act." HHS, ADVISORY OPINION 21-01 ON THE PREP ACT AND SCOPE OF PREEMPTION PROVISION, p. 4 (Jan. 8, 2021) ("ADVISORY OPINION 21-01"). Additionally, HHS abrogated the "nonuse" line of reasoning stating that such a limited view "clashes" with the "relating to" language of the PREP Act. *Id.* at 3. Rather, the PREP Act will apply so long as there is not a complete absence of some form of decision-making. *Id.* Accordingly, HHS, under the authority granted to it by Congress and the controlling deference the Supreme Court requires it be given, has issued a directive adopted into its Initial Declaration, which has thereby given it the force of law, and abrogated these erroneous opinions based on the alleged "failure" to use or "non-use" of COVID-19 countermeasures.[11]

### b.    *Physical Administration of Countermeasures*

Several district courts followed an erroneous line of reasoning that required a COVID-19 countermeasure, such as a mask, thermometer, or test be administered direct to the decedent, ignoring entirely the contagion of the COVID-19 virus and HHS directives that those countermeasures be administered to staff and visitors in order to protect senior assisted living residents, such as Plaintiffs' decedent.[12]

---

[11] This rejection was subsequently incorporated into the COVID-19 Declaration and is thereby entitled to *Chevron* deference. *See* Fourth Amendment, 85 Fed. Reg. at 79190 ("[T]he Declaration must be construed in accordance with the HHS Office of the General Counsel Advisory Opinions on the PREP Act and the Declaration.")

[12] HHS acted through Congress's defined "Authorities Having Jurisdiction" (AHJ), such as the Centers for Disease Control, and state and county health departments.

These erroneous remands are premised on the inapposite reasoning of *Casabianca v. Mount Sinai Medical Center*, an unpublished New York State Court Order rejecting the PREP Act in the context of non-use and physical administration under the H1N1 Declaration. *See* 2014 WL 10413521 (N.Y. Sup. Dec. 12, 2014). In *Casabianca*, the plaintiff brought a medical malpractice and wrongful death action when her husband was denied an H1N1 vaccine and ultimately died after he was exposed to the swine flu. *See id.* at *1. The defendants sought to dismiss the action because the PREP Act precluded state court jurisdiction. *Id.* at *2. The Supreme Court of New York denied the motion, finding that the PREP Act could only apply where the vaccine was actually administered to the decedent. *Id.* at *4. The physician, however, had declined to administer the vaccine to the decedent because he was following the directives of HHS and AHJ setting out who should receive the vaccine. The physician decided the decedent did not fall into any of the categories listed for administration, under what was in essence a countermeasure program plan.

Reliance on *Casabianca* is foundationally flawed as it is premised on an entirely different HHS Declaration that defines "covered countermeasures" in a much narrower scope than the COVID-19 Declaration. *Compare* Fourth Amendment, 85 Fed. Reg. at 79196 (defining "[a]ny antiviral… any diagnostic, any other device, any respiratory protective device ... used… to diagnose, mitigate, prevent, treat, or cure COVID-19 or [its] transmission…or to limit [COVID-19's] harm") *with* Pandemic Influenza Vaccines—Amendment, 77 Fed. Reg. 13329, 13335 (Mar. 6, 2012) ("vaccines against pandemic influenza A viruses [and the] devices … used in the administration of these vaccines"). Indeed, COVID-19 had no vaccine until nearly a year after the discovery of COVID-19. Moreover, the reasoning of *Casabianca* has been unequivocally rejected by HHS:

> The [*Casabianca*] court was wrong. As the court acknowledged, 'administration' is broader than the 'physical provision of a countermeasure to a recipient.' ***'Administration' also encompasses 'activities related to management and operation of programs and locations for providing countermeasures to recipients, such as decisions and actions involving security and queuing, but only insofar as those activities directly relate to the countermeasure activities.'***
>
> ***
>
> The plain meaning of 'management and operation of programs for providing countermeasures' includes following CDC [countermeasure] guidelines. And if there were any doubt, the plain meaning of 'activities related to' such management and operation is even broader. And that broader definition ***would certainly cover***

13

> ***running a [countermeasure] program*** pursuant to CDC guidelines, even assuming
> arguendo that 'management and operation' does not.

HHS ADVISORY OPINION 20-04, p. 7 (citations omitted)(emphases added). HHS reinforced its
rejection of a physical administration requirement in ADVISORY OPINION 21-01 , p. 2, 5, wherein
it designated such a requirement as a "'black and white' view [that] clashes with the plain language
of the PREP Act. ADVISORY OPINION 21-01 at 2 (issued directly in response to "a spate of recent
[nursing home] lawsuits…where [plaintiffs] allege [failures related to covered countermeasures]").

      HHS's rejection of a strictly construed physical administration and "use" requirement must
be given controlling deference on these interpretations. *Chevron, U.S.A., Inc.*, 467 U.S. at 843–44;
*Mead Corp.*, 533 U.S. at 231 (stating notice-and-comment rulemaking is not a prerequisite to
*Chevron* deference); *Cable & Telecommunications Ass'n,* 545 U.S. at 980 ("Chevron requires
[deference] to an agency's construction, even if it differs from what the court believes to be the
best interpretation…"); *see also* §247d-6d(b)(9) (requiring only reports to Congress, negating a
notice-and-comment requirement).

> **c.      Failure to Recognize Countermeasure Program/Facility as
> Covered Countermeasure in COVID-19 Crisis**

      Similarly, federal district courts have relied on the now abrogated *Casabianca* to disregard
three-fourths of HHS's four-part definition of "administration", to wit:

- o   physical provision of the countermeasures to recipients;
- o   **activities and decisions directly relating to public and private delivery,
  distribution and dispensing of the countermeasures to recipients;**
- o   **management and operation of countermeasure programs**; or
- o   **management and operation of locations for purpose of distributing and
  dispensing countermeasures**.

Fourth Amendment, 85 Fed. Reg. at 79197 (emphases added). Instead, these courts read "physical"
to apply to each prong of the definition in clear contradiction to the Declaration, which is contrary
to basic rules of construction. *See* Initial Declaration, 85 Fed. Reg. at 15200 (providing an example
of a slip-and-fall due to lax security, *see discussion infra*). HHS corrected these misapplications
providing that program planners, such as Defendants, which manage and operate a COVID-19
countermeasure program and a COVID-19 location are covered by the PREP Act protections

regardless of any "physical administration" of a countermeasure with the following Advisory Opinions of controlling authority:

- ADVISORY OPINION 20-04 at p. 5 (stating a private university would be immune under the PREP Act for using a lower COVID -19 testing frequency (i.e. *failure* to test as similar plaintiffs would phrase their complaint)); and,

- ADVISORY OPINION 21-01 P. 4 (providing only "failure to make any decisions whatsoever, thereby abandoning [a] duty to act as a program planner" as an example of non-coverage, and even that circumstance is "a small hole through which to wiggle").

As stated *supra*, these HHS authorities are entitled to controlling deference declarations. *See Chevron, U.S.A., Inc.* 467 U.S. at 843–44.

Given the nature of public health emergencies such as pandemics and the need for HHS to act swiftly and decisively in the interest of a "whole of nation response", HHS was delegated the broad authority to define what is a countermeasure and what entities and what activity would be provided PREP Act protection. *See* § 247d-6d(b)(1) ("Authority to Issue Declaration")

> [I]f the Secretary makes a determination that a disease or other health condition or other threat to health constitutes a public health emergency …, the Secretary may make a declaration, through publication in the Federal Register, recommending, under conditions as the Secretary may specify, the … ***administration, or use*** of one or more covered countermeasures, and stating that subsection (a) ["Liability Protections"] is in effect with respect to the activities so recommended.

(emphasis added); *see also* § 247d-6d(b)(4):

> The Secretary may… amend any portion of a declaration… . Such an amendment shall not retroactively limit the applicability of… ["Liability Protections"] with respect to the ***administration or use of the covered countermeasure involved***.

(emphasis added); Department of Justice ("DOJ") Statement of Interest, *Bolton v. Gallatin Center for Rehabilitation & Healing, LLC*, 3:30-cv-00683 at 1–2 (MD Tenn. Jan. 19, 2021) (providing that the PREP Act grants "sweeping" immunity to garner private-sector partners across the nation, which is crucial to a "whole-of-nation response" to COVID-19).

In its Initial Declaration, HHS saw fit to provide a four-prong definition to the Congressional language of "administration" of a countermeasure, set out *supra* at p. 14, and specifically declared that the : management and operation of countermeasure programs; and

management and operation of locations for purpose of distributing and dispensing countermeasures were covered by the PREP Act protections.  *See* 85 Fed. Reg. at 15200. HHS further demonstrated the breadth of the PREP Act's protections to program planners, such as Defendants who administer countermeasure programs and locations with examples that include premises liability slip and fall and fender bender scenarios, to-wit:

> [T]he Act *precludes a liability claim* relating to the management and operation of a countermeasure distribution program or site, such as a ***slip-and-fall injury or vehicle collision** by a recipient receiving a countermeasure at a retail store serving as an administration or dispensing location that alleges, for example, lax security or chaotic crowd control*. However, a liability claim alleging an injury occurring at the site that was not directly related to the countermeasure activities is not covered, such as a slip and fall with no direct connection to the countermeasure's administration or use.

*Id.* In other words, HHS had defined, as Congress has so charged, a covered countermeasure to include the "program" through which and the "facility/location" in which, those countermeasures are used, administered or distributed. *See also* HHS RESPONSE LETTER p. 1 (Aug. 14, 2020) (declaring Senior Assisted Living Centers as "program planners" when they manage and operate a COVID-19 countermeasure program and/or a COVID-19 countermeasure facility). Therefore, cases failing to grant countermeasure programs and facilities the full breadth of PREP Act protections, including jurisdictional federal forums, are erroneous by virtue of the Initial Declaration and certainly have been abrogated or superseded by subsequent HHS pronouncements. *See generally*, Amendment Four, ADVISORY OPINION 20-04, and ADVISORY OPINION 21-01, that are entitled to "controlling weight" deference (*Chevron, U.S.A., Inc,* 467 U.S. at 843–44); *see also* HHS Response Letter, that is entitled to "respect" (*See Christensen v. Harris Cty.*, 529 U.S. 576 (2000); and DOJ SOI that is entitled to "considerable interest" (*See Republic of Austria v. Altmann,* 541 U.S. 677, 701 (2004) (such positions on the exercise of federal jurisdiction and statutory construction are "well within the province of the court" and is given no deference but is of "considerable interest")).

### d.     *Misconstruing PREP Act Cause of Action and Remedy*

Similar to the ATSSSA construct that grants complete preemption, *see In re WTC Disaster Site*, 414 F.3d 352 and discussion *supra* p. 7, Congress provided expressly for an "exclusive federal cause of action" and an "exclusive federal remedy" in the PREP Act. In setting up this "exclusive" federal remedial scheme, Congress: 1) directed complete immunity from all state and other federal

actions; 2) created a pre-litigation administrative remedy; and 3) created a litigation scheme complete with pleading requirements, a discovery mechanism, choice of law rules, presumptions and damages parameters. *See* §§ 247d-6d(c)(1), (e)(2), (e)(4)(A–C), (e)(5–8), 247d-6d(b)(8), 247d6-e.

The only litigation allowed related to COVID-19 countermeasure programs and facilities/locations is through these mechanisms and in the federal court system, and specifically in the D.D.C. *See* § 247d-6d(d)(1) (the "sole exception to suit and liability of covered persons set forth [by the monetary fund] shall be for an exclusive Federal cause of action"); and (e)(1) ("Exclusive Federal Jurisdiction" that this "exclusive Federal cause of action" be filed "only in the United States District Court for the District of Columbia"). No other action lies: There is a federal equitable administrative remedy and litigation remedy for PREP Act claims. §§ 247d-6d(a),(d); 247d-6e(a). There is no indication that would suggest that Congress meant for the PREP Act to be additive of the panoply of state court actions in state court forums, and such a suggestion runs counter to the very purpose of PREP—to extinguish or otherwise limit suit and liability of HHS private partners in a time of national need. *See* § 247d-6e(d) (requiring the CCPF "be **exclusive** of any other civil action or proceeding for any claim or suit this section encompasses" and be exhausted before being allowed to proceed to the exclusive civil litigation process of § 247d-6d) (emphasis added); *see also* § 247d-6d(a)(1)(participants, such as Defendants "shall be immune from suit and liability under Federal and State law with respect to all claims for loss" arising from a countermeasure); and *id.* at (b)(8) (No "state may establish, enforce, or continue in effect…any provision of law or legal requirement that is different from, or is in conflict with, any requirement applicable under this section [with respect to] any other aspect of safety or efficacy…")

Nevertheless, district courts have begun to hold that Congress did not intend to provide a "federal cause of action" as it clearly stated; that a pre-litigation administrative remedy is not an adequate remedy; and that limiting a litigation remedy to "willful misconduct" doesn't warrant the immunity of state causes of action and prohibition of state forum that Congress clearly intended to prohibit. *See* §§ 247d-6d(a) ("a covered person shall be immune from ***suit and liability under Federal and State law*** with respect to all claims…relating to… the administration to or the use by an individual of a covered countermeasure") (emphases added), (d)(1) ("the ***sole*** exception to the immunity from suit and liability…shall be for an ***exclusive Federal cause of action***) (emphases

added), § 247d-6e(d) ("The [CCPF] shall be *exclusive* of any other civil action or proceeding for any claim or suit.") (emphasis added).

The leading remand order on this point*, Dupervil*, *supra.* is premised on an erroneous comparison to *Sullivan v. Am. Airlines, Inc*., 424 F.3d 267, 271 (2d Cir. 2005) (determining that the Railway Labor Act ("RLA", 45 U.S.C.A. §§ 151 *et seq*.) was not a complete preemption statute). *See DupervilI*, 2021 WL 355137 at *8–11. The *Dupervil* court, relying on *Sullivan*, determined that the PREP Act cannot be a complete preemption statute because, like the RLA, primary jurisdiction is vested in an administrative agency. *Id.* at 9. The *Dupervil* court erred because unlike the RLA, the PREP Act provides for a pre-litigation administrative process, which may be followed by an extensive litigation remedy in the D.D.C. *See, c.f., McLaughlin v. Florida Int'l Univ. Bd. of Trustees*, __ F.Supp. 3d__, 2021 WL 1343721, at *8–10 (S.D. Fla. Apr. 12, 2021) (dismissal for failure to exhaust pre-litigation administrative remedies under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2672, which is the exclusive litigation remedy for  federal employee-related torts).

The *Dupervil* court fails to mention that the RLA provides absolutely no federal cause of action, while the PREP Act provides an extensive claims process, including a federal cause of action as discussed *supra*. In the few opportunities that the Supreme Court has had to address complete preemption, it has not required a "primary federal litigation remedy", and to the extent one would be required, the PREP Act would might such a test.[13] *See Beneficial*, 539 U.S. at *8 ("where this Court has found complete pre-emption…the federal statutes at issue provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action"). In fact, more recent Supreme Court precedent would suggest the opposite in the specific context of the PREP Act. *See, c.f, Bruesewitz v. Wyeth, LLC*, 562 U.S. 223, 253 (2011) (dissenting Justices Sotomayor and Ginsburg acknowledge the PREP Act by using it for juxtaposition against the language of the National Childhood Injury Vaccine Act and observing that the PREP Act's "categorical (e.g., 'all') and/or declarative language (e.g., 'shall')" indicated a clear intent to preempt all claims within its ambit).

---

[13] Because 28 U.S.C. § 1447 divest the district court of jurisdiction and prevent appeals, there is relatively little appellate analysis of complete preemption statutes. Thus, errors in law related to jurisdictional preemption persist and multiply until such time as a Motion to Remand is denied and that order is appealed by the plaintiff. For that reason, among others discussed here, the district court COVID-19 remand opinions should be given little weight: they represent nothing more than the yet uncorrected and too often repeated faulty interpretations of the PREP Act's jurisdictional mandate.

The extensive claims process established by the PREP Act (*see supra,* p. 6) and the intent of the PREP Act to promote private partner cooperation requires a determination of complete preemption.

**D. The Substantial Federal Interest In the Resolution of this Matter Establishes Jurisdiction**

There is a clear federal government interest in providing a federal forum for the determination of the legal issues relating to critical infrastructure businesses' response to an ongoing national pandemic, as well as to interpret the federal government's response to those issues in the form of responsive legislation, rules, and regulations. There can be no doubt that there is a substantial and compelling interest in having these issues interpreted at the federal level: the federal courts are uniquely positioned to interpret Congressional intent as well as protect the interests of the federal government.

In deciding these issues, the Court would not "disturb any congressionally approved balance of federal and state judicial responsibilities" by retaining jurisdiction in this matter, thus satisfying the second *Grable* federal question prong. The issues under the PREP Act are not issues that Congress intended to be decided at the state court level. The plain language of the statute plainly asserts broad federal authority over the issues arising from the Act, and seeks to all but eliminate any semblance of state court control over those issues. *See* ADVISORY OPINION 21-01, p. 4–5 (discussing the PREP Act as invoking jurisdiction under Grable)*; see also* Def.s' Notice of Removal, p. 13–14.

**E. Jurisdiction is Proper Because Defendants are Federal Officers**

Individuals and entities acting under the direction of a federal officer are entitled to removal jurisdiction where (1) Defendants are persons; (2) Defendants were acting under the direction of a federal officer when it engaged in the allegedly tortious conduct; (3) There is causal nexus between the plaintiff's claims and the defendant's actions under federal direction; and (4) Defendants have raised a colorable defense based upon federal law. *See* 28 U.S.C. § 1442(a); *see also Goncalves v. Rady Children's Hosp.*, 865 F.3d 1237, 1244 (9th Cir. 2017); Def.'s Notice of Removal, p. 14–18. Due to the need for a coordinated, federal response to the COVID-19 and the need to protect crucial infrastructure, including health care facilities such as Defendants, assisted living facilities' prior general regulations was transformed by CDC guidance. *See* 42 U.S.C. §§ 5195c(b)(3), (e) (designating the activities of certain businesses as "critical infrastructure" thereby enabling the federal government to enlist the aid of private parties to ensure the continued operation of

infrastructure "so vital to the United States that [its] incapacity or destruction … would have a debilitating impact on security, national economic security, national public health or safety, or any combination of those matters.") At all times material hereto, Assisted Living Facilities have been required to follow extensive guidance from the Centers for Disease Prevention and Control in responding to COVID-19.

Because of this extensive, unprecedented regulation by the CDC and the federal defense available under the PREP Act, *see* discussion *supra*, Defendants are entitled to Federal Officer Jurisdiction. *See* Def.s' Notice of Remand, p. 14–18

## <u>CONCLUSION</u>

Plaintiffs filing of a claim with the PREP Act's CCPF on April 19, 2021, **moots** their Motion to Remand. Plaintiffs have chosen their forum and it is an exclusive, federal forum before the D.D.C—not this Court. In addition to this determinative reality, Plaintiffs aver that Defendants took at least some steps to create and implement an infection control plan and utilized covered countermeasures such as facemasks, thermometers, and COVID-19 tests, in a countermeasure facility thereby implicating the PREP Act's complete preemptive effect. Congress laid out an exclusive federal cause of action and federal forum for such claims. Regardless, of the Plaintiffs' determinative filing with the CCPF, their claims otherwise are completely preempted and invoke federal question subject matter jurisdiction before the D.D.C. Plaintiffs' Motion to Remand is due to be DENIED on these multiple grounds.

Respectfully submitted this 30th day of April, 2021.

**Hall Booth Smith, P.C.**

*/s/ Jodi Barrett*

Jodi G. Barrett, Esquire
FBN: 0901156
*Counsel for Defendants*
1400 Centrepark Blvd., Suite 400
West Palm Beach, FL 33401
T: 561-472-1020
F: 561-472-1021
jbarrett@hallboothsmith.com
tlatham@hallboothsmith.com
bbrostrom@hallboothsmith.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court using CM/ECF on April 30, 2021, upon Spencer T. Kuvin, Esq, LAW OFFICES OF CRAIG GOLDENFARB, P.A., *Counsel for Plaintiffs* (schleider7403394@projects.filevine.com skuvin@800goldlaw.com, lweir@800goldlaw.com).

**Hall Booth Smith, P.C.**

*/s/ Jodi Barrett*

Jodi G. Barrett, Esquire
FBN: 0901156
*Counsel for Defendants*
1400 Centrepark Blvd., Suite 400
West Palm Beach, FL 33401
T: 561-472-1020
F: 561-472-1021
jbarrett@hallboothsmith.com
tlatham@hallboothsmith.com
bbrostrom@hallboothsmith.com

21